D. C. SHOPTAUGH, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, February 21, 1910.

1. COMMON CARRIERS: Failure to Furnish Cars: Pleading: Sufficiency of Petition. A petition which alleges that during the four months from July to October, inclusive, plaintiff offered for shipment 120,000 feet of oak logs of the value of $1920 and 60,000 feet of cypress logs of the value of $840 from a certain station, and asked for cars, but that defendant railroad company failed to furnish them, and that in consequence the logs became damaged contains "a plain and concise statement of the facts constituting the cause of action," and states a case for not furnishing cars to haul any of the logs during the months named.

2. ———: ———: ———: ———: Motion to Make Definite and Certain Properly Denied. The natural meaning of the averment in said petition that plaintiff "frequently and on numerous occasions made demands of defendant for cars on which to load

Shoptaugh v. Railroad.

and ship said logs and defendant promised to furnish them, but did not do so," is that demands were preferred frequently for cars to haul *all* the timber previously alleged to have been "placed for shipment over defendant's railroad," and not for cars for separate shipments, so that a motion to require the petition to be made definite and certain by stating the quantity of lumber on hand "for each particular shipment and the dates thereof," was properly overruled.

3. ———: ———: ———: ———: ———. Allegations in said petition of the value of the two species of logs when ready to ship and the depreciation in value during the period they lay at the shipping point for lack of cars were sufficient to enable defendant to prepare its defense, so far as the measure of damages was involved, and it had no right to call on plaintiff to allege the market prices either at such point or at the intended destination.

4. ———: ———: ———: ———: ———. In an action against a railroad for failure to furnish cars to transport plaintiff's logs, plaintiff need not designate in his petition the character of cars required; defendant being presumed to know what kind were needed.

5. ———: ———: ———: ———: Method of Raising: Trial Practice. In such a case, the proper method of raising the objection that defendant was entitled to have information as to the dates on which plaintiff made application for the cars was by objecting to evidence on the ground several causes of action were united in the petition but not separately stated so as to be distinguished.

6. PLEADING: Motion to Make Definite and Certain: Pleading Over: Waiver. It is likely a motion to require the petition to be made definite and certain is waived by answering and going to trial.

7. COMMON CARRIERS: Failure to Furnish Cars: Duty to Provide Necessary Equipment: Extraordinary Traffic. An extraordinary increase of business, which could not have been anticipated and provided for by using judgment and diligence and which prevents a railroad from furnishing cars, is a good defense to an action for its failure to furnish cars.

8. ———: ———: Witness: Competency. In an action against a railroad for failure to furnish cars to transport plaintiff's logs, witnesses, who, though not railroad experts, were timber shippers, were competent to testify to a car shortage and as to whether the deficiency in number of cars was any greater than in preceding years.

9. ———: ———: **Evidence: Shortage in Previous Years.** In an action against a railroad company for failure to furnish cars to transport plaintiff's logs, evidence that for several years prior to the year in question there had been a shortage in timber cars equal to the deficiency that year inclined to overcome a defense of an unusual volume of traffic which could not have been foreseen, and to prove a scarcity of cars had existed so long defendant could and should have corrected it.

10. ———: ———: **Shipper Continuing to Haul Logs After Knowledge of Car Shortage.** In an action against a railroad for failure to furnish cars to transport plaintiff's logs, where plaintiff did not know from the first that he could not ship, it was not a defense that, after discovering such fact, he continued to haul logs to the station, but cause only for denying redress to the extent he increased his damage by accumulating logs after he knew that cars would not be available.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*W. F. Evans* and *Moses Whybark* for appellant.

(1) The court erred in overruling the motion filed by defendant to require the plaintiff to make his petition more definite and certain. The general charge of failure to furnish cars was insufficient to advise the defendant of the condition of its transportation facilities with reference to the needs of plaintiff at the time plaintiff desired to make shipments, and time was therefore an essential ingredient in the defense, and whenever such is the case it must appear with certainty in the petition. 6 Am. and Eng. Ency. Pl. and Pr., pp. 255, 256. And the motion in this case was proper and it was timely filed. Ruebsam v. Transit Co., 108 Mo. App. 437; Wilbur v. Railroad, 125 Mo. App. 689; Linville v. Green, 125 Mo. App. 289. (2) Under the testimony in this case the defendant was not liable to plaintiff for failing to furnish cars to make his shipments, and the court should have found for the defendant, and

erred in overruling the defendant's demurrer to the evidence. The evidence showed a case where the defendant was called upon to provide unusual facilities, not anticipated and not possible for it to prepare for. Heading & Stave Co. v. Railroad, 119 Mo. App. 495; Ballentine v. Railroad, 40 Mo. 491; Dawson v. Railroad, 79 Mo. 296; Faulkner v. Railroad, 51 Mo. 311; State ex rel. v. Railroad, 99 N. W. 309; State ex rel. v. Railroad, 101 N. W. 23; Strought v. Railroad, 87 N. Y. Supp. 30; 4 Elliott on Railroads, (1 Ed.), sec. 1470, p. 2287; Moore on Carriers, p. 105; Pruitt v. Railroad, 62 Mo. 527. (3) The testimony conclusively showed that defendant had sufficient equipment to transact the business ordinarily done on its road, and had fully performed its obligations as a common carrier in that respect; the testimony further conclusively showed that there was an unusual pressure of business in the year 1907 and up to about November 15th, which it was unable to meet and could not possibly provide the facilities for transportation in time to meet this emergency, and that it distributed the cars it controlled to the various stations so as to accommodate shipping as well as it could to perform its duty, and further that there was a car famine all over the United States caused by unusual pressure of shipping. The defendant is not liable to plaintiff under the facts in this case. Ballentine v. Railroad, 40 Mo. 491; Dawson v. Railroad, 79 Mo. 296; Faulkner v. Railroad, 51 Mo. 311; Heading & Stave Co. v. Railroad, 119 Mo. App. 495; 5 Am. and Eng. Ency. of Law (2 Ed.), pp. 167, 168; Railroad v. Wolcott, 141 Ind. 267; Ayres v. Railroad, 71 Wis. 372; Railroad v. Racer, 10 Ind. App. 503; Importing & Steamship Co. v. Railroad, 104 Md. 693; Maulden v. Railroad, 73 S. C. 9; 6 Cyc. of Law and Pro., pp. 445-6 (par. 6). (4) The plaintiff testified that he requested the agent at Hayti to furnish him cars, and he was advised by the agent that he was unable to furnish

him cars to make his entire shipments, but would do the best he could, yet he continued to haul logs to Terry, knowing the car situation.   There never was an agreement on the part of the defendant to furnish him all the cars he required, but he was fully advised that the defendant was unable to do so.   He was not entitled to judgment for that reason, considering all the facts in the case as to the car situation; besides the defendant had never accepted the logs for shipment.   Hauling the logs to the switch was not an acceptance by the defendant for shipment.   6 Cyc. of Law and Pro., pp. 444-6; Importing & Steamship Co. v. Railroad, 104 Md. 693; Ayres v. Railroad, 71 Wis. 372.

*Shepard & Shepard* for respondent.

GOODE, J.—Action for damages for defendant company's failure to furnish plaintiff sufficient cars to ship 120,000 feet of oak logs of the value of $1920, and 60,000 feet of cypress logs of the value of $840, from the station of Terry to Chaffee, Missouri, during the months of July, August, September and October, 1907. Plaintiff averred he frequently demanded of defendant's agent at Hayti, a station three miles from Terry, and the right place to apply, cars in which to ship the said logs, the agent promised to furnish them, but did not; by reason of this omission of duty the logs became damaged and depreciated in value and caused plaintiff a loss of $920, for which he prayed judgment.   Besides a general denial, the answer said defendant furnished plaintiff all the cars at the station of Terry needed to transact the average business done with him there and consistent with defendant's duty to its other patrons at said station and elsewhere along its line; that if plaintiff was prevented from making timely shipments of his logs by lack of cars during the interval mentioned, it was on account of the unusual pressure of business at the station, together with the unusual pres-

sure of business on defendant's railroad at other places, which prevented defendant from supplying cars at different stations necessary to meet the emergency—an emergency which could not be foreseen in time to prepare for it; that defendant made a just distribution of cars at Terry with reference to its duty as a common carrier to all its patrons. It is also averred an extraordinary freshet rendered it impossible for a considerable period to supply cars at Terry or elsewhere on the line of defendant's railway or to haul shipments for plaintiff. The new matter in the answer was put in issue by a reply denying the averments.

It is enough to say of the testimony in this case that it proved plaintiff needed four cars a day, which were not furnished as demanded during the period mentioned, and he suffered loss in consequence; further, that he demanded cars frequently and the agent sometimes promised to furnish them but did not, and at other times said they could not be obtained. For defendant the evidence tended to prove there was a great and unexpected increase of transportation business over the country generally during the months in question, and many railroad companies fell behind fifty to sixty per cent in supplying their patrons with shipping facilities, defendant among others; car manufacturing companies were behind with their orders and railway companies could not obtain more cars to handle the accession of business; the officers of this company who were charged with looking after the matter, distributed as rapidly and equitably as possible, cars to the different stations along its lines, including the line over which plaintiff shipped and to the different patrons at each station; they had 150 flat cars on the line to use for the carriage of logs in the district where plaintiff shipped and 175 coal cars were used for hauling logs out whenever they hauled coal into the district; in making this distribution plaintiff was treated like other shippers and his due proportion of cars of the kind he needed was al-

lotted and furnished him as promptly as possible; as lumber was high in price, there was an enormous increase in the demand for cars to carry timber; there was a "car famine" in 1907. Another witness said there were 127 stations from which defendant took out logs in the Terry district and from forty to forty-five cars to distribute daily thereon. On this issue of fact the testimony for plaintiff went to prove there had been a deficiency of cars at the station of Terry for two or three years anterior to the summer and fall of 1907, and plaintiff and others engaged in the same business had been unable often during that period, to procure cars when they needed them. Some of the testimony for plaintiff went to prove there was a better supply of cars during the summer and fall of 1907 than for some time before, though the supply always had been inadequate. The effect of this evidence, if believed, was to show the deficiency of cars was not due to an extraordinary accession of business, but because defendant failed to keep on hand enough cars to supply the ordinary demands of shippers. The verdict was in plaintiff's favor for $507.96, and defendant appealed.

Defendant filed a motion to compel plaintiff to make his petition more specific, saying the petition averred plaintiff had placed for shipment at Terry, during the months mentioned, 120,000 oak and 60,000 cypress logs, but had failed to state what quantities of logs he had placed at said station for shipment on different dates, where the same were to be shipped, the character of the cars required for them, the market price of the timber for which cars were required, either at the point of shipment or point of destination, when he made application for cars, or how many he desired for each shipment; all of which particulars defendant alleged should have been given and the court was prayed to require plaintiff to give them. This motion was overruled and an exception saved. The other points raised on appeal are that the court erred in not sustaining

a demurrer to the case made by plaintiff, in receiving testimony from the witnesses for plaintiff tending to prove there was no unusual shortage of timber cars on defendant's line of railroad at the station of Terry and other stations in the vicinity, during the months mentioned, but there had been an inadequate supply of cars for two or three years before; erred also in disregarding the testimony of the witnesses for defendant, and all competent testimony, which went to prove the cause of plaintiff's not being supplied with cars as he needed them, was the unusual and great increase of business on defendant's railroad and the lines of other companies in 1907.

The petition was specific enough as to the quantity of logs, their value and the two kinds offered for shipment by plaintiff during the four months from July to October, 1907, inclusive. It also alleged that on numerous occasions plaintiff asked for cars but failed to get them, and defendant failed to furnish plaintiff cars in which to ship the logs mentioned or any of them, and in consequence they (the logs) became damaged and decreased in value, as the market meanwhile declined. The effect of those allegations was to state a case for not furnishing cars to haul any of the logs during the months named, and this was "a plain and concise statement of the facts constituting a cause of action." [R. S. 1899, sec. 592.]

The motion for a more definite petition asked to have one fact given which the petition already gave, i. e., the place to which the logs were to be shipped. In the petition nothing was said about the logs being delivered for separate shipments on different dates, but the motion took this for granted in asking that plaintiff be required to set forth the quantity he had on hand "for each particular shipment and the dates thereof." The court could not know the logs were tendered on various days for separate shipments; hence said part of the motion was bound to be overruled. In the petition

it is averred plaintiff "frequently and on numerous occasions made demand of defendant and on its duly authorized agents for cars on which to load and ship said logs, and defendant promised to furnish them but did not do so," etc. It is to be observed that, read in connection with the preceding portion of the petition, the natural meaning of the averment of frequent demands, is that demands were preferred frequently for cars to haul all the timber previously alleged to have been "placed for shipment over defendant's railroad," and not for cars for separate shipments; though in point of fact demands were made at different dates for so many cars to haul so much timber then at the station ready to be shipped; for logs accumulated in quantity during the four months and plaintiff testified he asked for cars every day. But it is certain the petition does not either expressly or inferentially so say and instead states the facts in the way we have said. With the petition in that form, the court could not assume, against its averments, that plaintiff asked for allotments of cars on different days to haul whatever logs were on hand when the request was made. The value of the two species of logs when ready to ship and a depreciation in value during the period they lay at Terry for lack of cars, were alleged. These allegations were definite enough to enable defendant to prepare its defense so far as the measure of damages was involved, and it had no right to call on plaintiff to allege the market prices, either at Terry or the intended destination of the timber. Defendant would be presumed to know what kind of cars were needed to haul the logs; its business as a common carrier required it to be informed about such matters. Therefore it was not incumbent on plaintiff to designate in his petition "the character of cars required to ship the same" (the logs). The only request in the motion which is worthy of attention as being for information which it was defendant's right to receive in order to meet the gravamen of the case related to

the dates on which he made applications for cars. What we have said already disposes of this point. If it had appeared on the face of the petition the frequent requests were for allotments of cars to carry different deliveries of logs, perhaps the point would have been well taken. But the import of the petition being to the contrary, the proper method of raising the objection in hand, if it is sound, as to which we do not decide, was by objecting to evidence on the ground several causes of action were united in the petition, but not separately stated so as to be distinguished. [1 Mo. Ann. Stat., sec. 593 and notes.] We may say the result showed defendant's rights were not prejudiced by omitting this information from the petition, because the evidence introduced in defense was general inability to furnish cars as promptly as needed during the months in question, and not ability to do so at times and inability at others. It is likely the motion was waived by answering and going to trial, but we have preferred to treat it at large in view of the state of the decisions of the Supreme Court on the point. [Shohoney v. Railroad, 122 S. W. 1025.]

Taking up the appeal on the merits, we hold it would have been a good defense if an extraordinary increase of business on defendant's line, which could not have been anticipated and provided for by using judgment and diligence, had prevented defendant from furnishing the cars. Railroad companies are expected to be prepared with an equipment necessary to handle the average traffic over their lines and such an increase as would be expected by managers of experience, for the volume of traffic will vary with the seasons and general business conditions. These contingencies ought to be provided for and the law requires them to be; but a railroad carrier need not be ready to handle any accession of business, however great, which some unforeseeable condition may cause; and in case an extraordinary

traffic occurs and consequent congestion of freight, the carrier must distribute its cars at the various stations in proportion to their needs. [Dawson v. Railroad, 79 Mo. 296.] The court granted all the declarations of law requested by defendant in which this limitation on its obligation to serve the public was recognized, yet found the facts against it; and the court might do this as trier of the facts. The evidence was contradictory as to whether fewer than usual of timber cars were furnished shippers in the third district of defendant's system; the district where plaintiff shipped. If the testimony of the witnesses for plaintiff was believed, the shortage had been continuous over several years and was not greater in the summer and fall of 1907 than it had been before; perhaps was less. Moreover, though defendant's trainmaster said there was a "car famine" all over the United States during those months, and particularly a shortage of timber cars on account of the extraordinary demand for lumber and the high price it brought, he left room to believe defendant's supply of that kind of cars was inadequate for the ordinary business of its patrons, as he said there were 127 stations from which lumber and timber were shipped and the company had forty-seven cars, suitable for hauling that kind of material, for daily distribution to those stations.

Defendant contends the witnesses who testified for plaintiff regarding the car shortage in the third district were not competent. Though they were not railroad experts, they were shippers of timber and, presumably, apprised concerning the fact they stated, namely, that there was a deficiency in timber cars for several years prior to 1907, equal to the deficiency that year. This testimony inclined to overcome the defense of an unusual volume of traffic which could not have been foreseen, and to prove a scarcity of cars had existed so long defendant could and should have corrected it.

The point is urged that as plaintiff knew in July the company could not furnish cars, but nevertheless continued to haul logs to the station for shipment when aware they would depreciate in value while lying there, he induced his loss.   Granting there is truth in this contention, as it is not contended plaintiff knew from the first he could not ship, his conduct was cause, not for denying any redress, but only denying it to the extent he increased the damage by accumulating logs after he knew cars would not be available.   No declaration[1] of law drawn on that hypothesis was requested.

The judgment is affirmed.   All concur.