ANDERSON *v.* CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY CO.

1. Commerce—Interstate Commerce—Administrative Questions
—Jurisdiction of Courts.

Under the act of congress of February 4, 1887, creating the
interstate commerce commission, and amendments (24 U.
S. Stat. p. 379 *et seq.*), where questions in interstate
commerce arising between shipper and carrier are admin-
istrative in character, unless they are first submitted to
the interstate commerce commission the courts are with-
out jurisdiction to afford relief.

2. Same—Damages for Failure to Furnish Cars—Jurisdiction
of State Courts.

The question of a railroad's failure to furnish a shipper
with sufficient cars for interstate shipments was not one
of an administrative character, requiring submission of
same to the interstate commerce commission before be-
ginning action therefor in the State court; the Hepburn
act amending the interstate commerce act (34 U. S. Stat.
p. 584), requiring the carrier to furnish sufficient cars,
being but declaratory of the common law.

3. Same—Unjust Discrimination—Rule of Carrier — Jurisdic-
tion of State Courts.

In an action for failure to furnish sufficient cars for inter-
state shipments, where unjust discrimination is alleged,
if such distribution has been made pursuant to a rule of
the carrier and in conformity with it, the shipper must first
proceed before the interstate commerce commission to
establish the discriminatory character of the rule; but if
the discrimination was caused by a breach of the rule
and resulted from its nonobservance, then the State courts
have immediate jurisdiction.

4. Carriers—Failure to Furnish Sufficient Cars—Evidence—
Sufficiency.

In an action against a carrier for failure to furnish sufficient
cars to meet plaintiff's normal demands, testimony *held*,
to make a case for plaintiff.

5. SAME—DUTY TO FURNISH CARS NOT MEASURED BY SUDDEN DEMAND.

If the great demand to furnish cars was sudden, and one the carrier would have no reason to apprehend, and it could not have been reasonably expected, the individual shipper could not insist as an absolute right upon having his requisitions filled.[1]

6. SAME—DISTRIBUTION OF CARS—DISCRIMINATION.

In case of car shortage it is the duty of the carrier to allot the cars so as to prevent unjust discrimination.

7. SAME—METHOD OF DISTRIBUTION—ADOPTION OF RULE.

Leaving the distribution of cars, in case of a shortage, to the discretion of ar officer of the carrier company would not be the adoption of a rule, but if such officer provided a rule of distribution, the rule would be the rule of the company.

8. SAME—ADOPTION OF RULE—EVIDENCE—SUFFICIENCY.

Evidence, *held*, sufficient to justify the conclusion by the jury that a rule for the distribution of cars was adopted by the carrier.

9. SAME—UNJUST DISCRIMINATION—QUESTION FOR JURY.

Evidence that plaintiff was unjustly discriminated against in the nonenforcement of the rule, *held*, sufficient to raise a question for the jury.

10. SAME—TRIAL—DISCRIMINATION—INSTRUCTIONS.

The trial judge was in error in instructing the jury that plaintiff could recover if there was discrimination in fact, taking no account of the question of the adoption of a rule.

11. SAME—DUTY TO FURNISH CARS FOR SEASONAL COMMODITIES.

A carrier's duty to furnish sufficient cars to meet the normal demand of the trade is not to be estimated by the number of cars needed when the normal demand is least, but by the number when the normal demand is heaviest, in respect to a seasonal commodity, such as logs.

12. SAME—DUTY TO ANTICIPATE SEASONAL DEMANDS.

The carrier is bound to know that at certain seasons of the year there will be movements of certain seasonal commodities, and is bound to anticipate and provide for such demand.

---

[1]On the question of duty of carrier to furnish cars to shipper, see notes in 8 L. R. A. (N. S.) 108, and 44 L. R. A. (N. S.) 643.

Error to Ontonagon; Driscoll (George O.), J. Submitted October 29, 1919. (Docket No. 25.) Decided December 23, 1919. Rehearing denied April 10, 1920.

Case by Robert E. Anderson against the Chicago, Milwaukee & St. Paul Railway Company for failure to furnish cars for the transportation of logs. Judgment for plaintiff. Defendant brings error. Reversed.

*Leigh C. Caswell* and *Arthur H. Brown* (*J. N. Davis,* of counsel), for appellant.

*Van Slyck & Walsh,* for appellee.

FELLOWS, J. Plaintiff is a logger and in 1916 and 1917 owned timber lands near a branch of defendant's railroad called in the record the "White Pine Branch" and the "White Pine Extension." Intending to operate during the winter season on this property he made known to defendant's agent his requirement for cars during the season. It is his claim that the cars were not furnished in the number requested and needed; that he was required to bank a large number of his logs, many were left on the ground and were rendered valueless, and that by reason of the failure of the defendant to furnish him cars he has suffered damage for the recovery of which this action was brought. He counts in his declaration on the failure of defendant to furnish the cars and upon unjust discrimination of the defendant in apportioning cars among the shippers in that locality. Such further detail as may be necessary to a full understanding of the case will be stated as we proceed.

Plaintiff's shipments were interstate. By appropriate objections at the beginning of the trial and motions for a directed verdict defendant raised the question of jurisdiction of the court to hear and determine the controversy. As this question challenges the juris-

diction of the court over the subject-matter and is the important question in the case and the one upon which defendant and appellant lays greatest stress, we shall consider it first. We note, but disagree with plaintiff's contention that it is not properly raised. It is insisted by the defendant that the questions here involved are administrative ones and the shipments being interstate shipments such questions are to be first submitted to, and determined by the interstate commerce commission created by the act of congress under the commerce clause of the Federal Constitution. It is insisted that such commission has jurisdiction to the exclusion of the State courts when the questions are administrative in character, and that the questions here sought to be litigated are of that character.

The power of congress to regulate interstate commerce is beyond question. Has it by the legislation regulating such commerce withdrawn or attempted to withdraw from the State courts jurisdiction to adjudicate such controversies as are here involved? Has it committed to the interstate commerce commission the determination of such controversies as here presented? Are the questions here involved of an administrative character to be solved only by an administrative board? These are the questions which present themselves at the threshold of this inquiry, and to them we must first address ourselves.

By the act of February 4, 1887, entitled, "An act to regulate commerce" (24 U. S. Stat. p. 379), the interstate commerce commission was created. By this act and amendments to it (see 25 U. S. Stat. p. 855; 28 U. S. Stat. p. 643; 32 U. S. Stat. p. 847; 34 U. S. Stat. p. 584), comprehensive provisions have been enacted in the regulation of interstate commerce and broad powers have been conferred upon the commission, powers of an administrative and *quasi*-judicial character. In the original act, and it has continued

without amendment, by section 22 it is, among other things, provided:

"And nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies."

In the leading case of *Texas & Pacific R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426 (27 Sup. Ct. Rep. 350, 9 Ann. Cas. 1075), the court had before it for review the decision of the court of last resort of Texas on the question. The Abilene company had brought suit in the State court against the railway company, alleging that the railway company had exacted an unjust and unreasonable rate for certain interstate shipments; there was also an allegation that the rate exacted was discriminatory. The railway company defended principally on the ground that the State court was without jurisdiction, that the interstate commerce commission must be first applied to, as the questions involved had been committed to that body by the act to regulate commerce. A judgment for the oil company in the trial court had been affirmed by the court of civil appeals. In an exhaustive opinion by the present Chief Justice, then Mr. Justice White, the legislation and authorities were reviewed and the functions of the commission and of the courts and the jurisdiction of both were fully considered, and it was held that the courts were without jurisdiction where the character of the question was as there involved until after the commission had acted; that the questions were administrative, the rate-making power was not in the judiciary, and that congress acting within its power had committed the determination of such administrative questions to an administrative body to the exclusion of the courts, and the judgment was reversed. This case was followed, and the reasoning of the opinion applied and extended in the later decisions of that court. Among

others see *Robinson* v. *Railroad Co.*, 222 U. S. 506 (32 Sup. Ct. Rep. 114); *Baltimore & Ohio R. Co.* v. *Pitcairn Coal Co.*, 215 U. S. 481 (30 Sup. Ct. Rep. 164); *Loomis* v. *Railroad Co.*, 240 U. S. 43 (36 Sup. Ct. Rep. 228); *Northern Pacific R. Co.* v. *Solum*, 247 U. S. 477 (38 Sup. Ct. Rep. 550); *Pennsylvania R. Co.* v. *International Coal Co.*, 230 U. S. 184 (33 Sup. Ct. Rep. 893, Ann. Cas. 1915A, 315); *Mitchell Coal & Coke Co.* v. *Railroad Co.*, 230 U. S. 247 (33 Sup. Ct. Rep. 916); *Morrisdale Coal Co.* v. *Railroad Co.*, 230 U. S. 304 (33 Sup. Ct. Rep. 938). We have stated that the doctrine of the *Abilene Case* had been extended. In the case of *Mitchell Coal & Coke Co.* v. *Railroad Co., supra,* Mr. Justice Pitney in an exhaustive dissenting opinion insisted that it had been extended too far, that it had nullified certain of the provisions of the act itself. But the cases cited and others which might be added must be taken as laying down the rule that where the questions are administrative in character they must be first submitted to the interstate commerce commission, and that unless first submitted to such commission the courts are without jurisdiction to afford relief.

This naturally leads us to consider whether the questions here involved are administrative in character such as to preclude the State court from inquiring into and adjudicating them without application having been first made to the commission. And first as to the failure to furnish sufficient cars. By the Hepburn act (34 U. S. Stat. p. 584), an amendatory act to the act of 1887, it is provided:

"And it shall be the duty of every carrier subject to the provisions of this act to provide and furnish such transportation upon reasonable request therefor, and to establish through routes and just and reasonable rates applicable thereto."

This was but declaratory of the common law. In the case of *Pennsylvania R. Co.* v. *Sonman Coal Co.,*

242 U. S. 120 (37 Sup. Ct. Rep. 46), the court had before it for review a decision of the supreme court of the State of Pennsylvania. The coal company had brought suit in the State court to recover against the railroad company for damages claimed to have been occasioned by the failure of the railroad company to furnish cars and for unjust discrimination; upon the trial the claim of unjust discrimination was abandoned, leaving only the question of failure to furnish cars as the basis of recovery; a judgment for $145,-830.25 had been affirmed by the supreme court of the State (241 Pa. St. 487, 88 Atl. 746). The contention there made was the same as here made, that the State court was without jurisdiction, that the questions were administrative in character and must first be submitted to the interstate commerce commission. Mr. Justice Van Devanter, speaking for the court after citing authorities, said:

"Applying these rulings to the case in hand, we are of opinion that a State court could entertain the action consistently with the interstate commerce act. Not only does the provision in section 22 make strongly for this conclusion, but a survey of the scheme of the act and of what it is intended to accomplish discloses no real support for the opposing view. With the charge of unjust discrimination eliminated, the ground upon which a recovery was sought was that for a period of four years, during which the conditions were normal, the carrier had failed upon reasonable demand to supply a shipper in interstate commerce a sufficient number of cars to transport the output of the latter's coal mine. Assuming that the conditions were normal and the demand reasonable, it was the duty of the carrier to have furnished the cars. That duty arose from the common law up to the date of the amendatory statute of 1906, known as the Hepburn act, and thereafter from a provision in that act which, for present purposes, may be regarded as merely adopting the common-law rule. There was evidence tending to show, and the jury found, that the conditions in the coal

trade were normal and the demand for the cars reasonable. Indeed, without objection from the carrier, the court said when charging the jury: 'There is no testimony disputing the claim of the plaintiff that these were normal times.' The carrier insisted and the jury found that the carrier had a generally ample car supply for the needs of the coal traffic under normal conditions, and' the jury further found that the failure to furnish the cars demanded was without justifiable excuse. Thus far it is apparent that no administrative question was involved—nothing which the act intends shall be passed upon by the commission either to the exclusion of the courts or as a necessary condition to judicial action.

"But there was testimony tending to show that the carrier was applying or following a rule for allotting cars which did not entitle the coal company to receive as many cars as it needed and requested, and because of this it is contended that the reasonableness of this rule was in issue and was an administrative question which the act intends that the commission shall solve. We cannot accede to the contention. The conditions in the coal trade being normal, as just shown, the number of cars to which the coal company was entitled was to be measured by its reasonable requests based upon its actual needs. It is only in times of car shortage resulting from unusual demands. or other abnormal conditions, not reasonably to have been foreseen, that car distribution rules originating with the carrier can be regarded as qualifying or affecting the right of a shipper to demand and receive cars commensurate in number with his needs. *Pennsylvania R. Co.* v. *Puritan Coal Co.*, 237 U. S. 121, 133. Such a rule being inapplicable in the conditions existing at the time, the rule mentioned in the testimony could not be a factor in the decision of the case, and whether in a time of unforeseen car shortage it would be reasonable or otherwise was not then material."

Let us consider now the question of unjust discrimination. As before, we should turn to the decisions of the court of final resort when Federal questions are involved. In the case of *Pennsylvania R. Co.* v. *Puritan Coal Co.*, 237 U. S. 121 (35 Sup. Ct. Rep.

484), the court had before it another holding of the
supreme court of Pennsylvania (237 Pa. St. 420, 85
Atl. 426, Ann. Cas. 1914B, 37). The coal company
had brought an action and recovered a judgment for
$74,323.88 for damages resulting from unjust discrim-
ination. This judgment had been affirmed by the State
supreme court. There, as here, the railroad company
insisted that the State courts were without jurisdic-
tion. Mr. Justice Lamar, speaking for the court after
considering sections 8 and 9 of the act, takes up the
provisions of section 22, which we have quoted above,
and says:

"But sections 8 and 9 standing alone might have
been construed to give the Federal courts exclusive
jurisdiction of all suits for damages occasioned by the
carrier violating any of the old duties which were pre-
served and the new obligations which were imposed
by the commerce act. And, evidently, for the purpose
of preventing such a result, the proviso to section 22
declared that 'nothing in this act contained shall in
any way abridge or alter the remedies now existing at
common law or by statute, but the provisions of ·this
act are in addition to such remedies.'

"That proviso was added at the end of the statute,
—not to nullify other parts of the act, or to defeat
rights or remedies given by preceding sections,—but
to preserve all existing rights which were not incon-
sistent with those created by the statute. It was also
intended to preserve existing remedies, such as those
by which a shipper could, in a State court, recover
for damages to property while in the hands of the
interstate carrier; damages caused by delay in ship-
ment; damages caused by failure to comply with its
common law duties and the like. But for this proviso
to section 22 it might have been claimed that, congress
having entered the field, the whole subject of liability
of a carrier to shippers in interstate commerce had
been withdrawn from the jurisdiction of the State
courts and this clause was added to indicate that the
commerce act, in giving rights of action in Federal
courts, was not intended to deprive the State courts of
their general and concurrent jurisdiction. * * *

"There are several decisions, already cited, which hold that suits against railroads for unjust discrimination in interstate commerce can only be brought in the Federal courts. But it must be borne in mind that there are two forms of discrimination—one in the rule and the other in the manner of its enforcement; one in promulgating a discriminatory rule, the other in the unfair enforcement of a reasonable rule. In a suit where the rule of practice itself is attacked as unfair or discriminatory, a question is raised which calls for the exercise of the judgment and discretion of the administrative power which has been vested by congress in the commission. It is for that body to say whether such a rule unjustly discriminates against one class of shippers in favor of another. Until that body has declared the practice to be discriminatory and unjust no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement. When the commission has declared, the rule to be unjust, redress must be sought before the commission or in the United States courts of competent jurisdiction as provided in section 9.

"But if the carrier's rule, fair on its face, has been unequally applied and the suit is for damages, occasioned by its violation or discriminatory enforcement, there is no administrative question involved, the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the State or Federal courts."

Sustaining the views expressed in these cases will be found the following: *Eastern Railway Co.* v. *Littlefield*, 237 U. S. 140 (35 Sup. Ct. Rep. 489); *Illinois Cent. R. Co.* v. *Mulberry Coal Co.*, 238 U. S. 275 (35 Sup. Ct. Rep. 760).

The cases clearly and unmistakably lay down the rule that when the action is for damages due to the carrier's failure to furnish cars when reasonably demanded, the shipper may proceed in the State court; that when the action is for damages occasioned by

discrimination practiced by the carrier in the distribution of cars during a period of car shortage and such distribution has been made pursuant to a rule of the carrier and in conformity with it, the shipper must first proceed before the interstate commerce commission to establish the discriminatory character of the rule; but that where the discrimination is caused by a breach of the rule, and the discrimination results from its nonobservance, then the State courts have jurisdiction in an action brought by the shipper to recover damages occasioned by such discrimination.

But counsel for the defendant insist that plaintiff failed to make a case under either of the claims asserted and that the court for this reason should have directed a verdict. This contention requires us to again refer to the facts and to more fully state them. And first as to the failure to furnish cars. The plaintiff testified that he made a seasonable request of the agent of defendant for eight cars daily, and that he was not furnished them. It is not necessary for us to determine whether this proof alone made a *prima facie* case, as he further testified that for several years defendant had been short of cars to meet his demands. In addition to his testimony, the testimony of the superintendent of transportation of defendant is to the effect that in normal years the division in which these logging operations were being conducted required from 1,400 to 1,500 cars for logging purposes, while the superintendent of the division testified that during this season the division had only 500 cars, which number was, during the season, reduced to 450. Clearly a case of failure to furnish cars to meet the normal demands was made by this testimony.

As to discrimination, it was the claim of defendant that there was a shortage of cars adaptable for use in transporting logs during this season due to unforeseen and unprecedented conditions; that heavy

snow storms prevented delivery of cars; that the pre-war demands of the government took a large number of flat cars; that the shortage was country-wide, and that due to weather conditions and unprecedented and unforeseen demands for flat cars a large amount of its equipment became unavailable for logging opera-tions on this division. Manifestly the impossible could not be required of the carrier. If the great demand to furnish cars was sudden and one the carrier would have no reason to apprehend, and it could not have been reasonably expected, the individual shipper could not insist as an absolute right upon having his requisitions filled. As remarked by Mr. Justice Lamar in *Pennsylvania R. Co.* v. *Puritan Coal Co., supra:*

"The common law of old in requiring the carrier to receive all goods and passengers recognized that 'if his coach be full' he was not liable for failing to transport more than he could carry."

It is equally manifest that in case of car shortage the duty of the carrier is to allot the cars so as to prevent unjust discrimination. We have attempted to make clear that when a car shortage occurs, if the cars are allotted in accordance with a rule adopted by the carrier and it is claimed by the shipper that the rule works a discrimination, the shipper must first have that administrative question settled by the inter-state commerce commission, and that no matter how inequitable the rule may be, or how unjustly it may discriminate against the individual shipper, its propriety is to be first submitted to the commission and the administrative question settled by that adminis-trative body before any action may be brought for damages occasioned by its enforcement; but where a rule has been adopted and it is not adhered to and discrimination is worked by a failure to observe the rule, by and in its breach, then no administrative question is involved, but one of fact is presented which

the courts may determine. One of the claims of defendant's counsel is that by leaving the distribution of available cars to the discretion of the chief train dispatcher, the railroad company thereby adopted a rule. But leaving the distribution of cars in case of car shortage to the discretion of an officer of the company is not the adoption of a rule. If such officer provides a rule of distribution under the circumstances, the rule would be the rule of the company; but giving an officer a free hand is not the adoption of a rule. There is something of a conflict in the testimony as to whether there was a rule adopted and what it was; but we think there was evidence which would have justified the jury in finding that a rule was adopted. The chief train dispatcher testified: "We would distribute the cars in the ratio of the available cars to the calls." The jury had the right to conclude from this testimony that this was the rule adopted by the company. Was there evidence that unjust discrimination resulted in nonenforcement of this rule? We think there was. If by the use of the word "calls" this witness intended to convey the impression that the available cars were distributed in the ratio of cars to the requests for cars his own testimony is susceptible of the conclusion that the rule was not observed. There were three logging companies operating in this territory, during at least a portion of the time: The Diamond Lumber Co., Spies-Thompson Co., and Northland Lumber Co. This witness testified that the Diamond Lumber Company never that winter placed a specific order for cars with him. If by the use of the word "calls" this witness intended to convey the impression that the available cars were distributed in the ratio of cars to the demands for cars by reason of the operations of the various loggers and logging companies, then there was conflicting testimony upon the question of whether the rule was violated. There

was disputed testimony tending to show that the extent of the operations of the Diamond Lumber Company and Spies-Thompson Company were each twice those of plaintiff; while a table of cars furnished that season put into the case by the defendant shows that for the month of December after the date plaintiff commenced operation he received 8 cars, the Diamond Lumber Company 45 cars, Spies-Thompson Company 47 cars; for January, plaintiff received 69 cars, the Diamond Lumber Company 221 cars, Spies-Thompson Company 271 cars; and for February, plaintiff received 44 cars, the Diamond Lumber Company 151, Spies-Thompson Company 191. There was also testimony that in the distribution of the "bunk" cars, so-called, a car desirable in shipping logs as it saved the shipper the expense of binding and securing the load, there was considerable favoritism shown the Diamond Lumber Company. While much of the testimony here detailed was disputed testimony, on a motion to direct a verdict for defendant that most favorable to plaintiff must be accepted. Under this rule we are satisfied that plaintiff was entitled under proper instructions to take the verdict of the jury on both his claims.

There remains to be considered two assignments of error based on the charge of the court. The first of these which we shall discuss covers the main part of the charge. It is insisted by counsel for the plaintiff that it is not sufficiently specific, and it is pointed out that it covers some two and one-half pages of the record. But the length of the assignment of error alone does not determine the question as to whether it is sufficiently specific. It is somewhat difficult to perceive, when we consider the charge, how error could be assigned upon it without setting forth the portion claimed to be erroneous. Without quoting the assignment of error in full it will suffice to state that the court charged the jury that the plaintiff could re-

cover if they found that defendant had unreasonably failed to furnish cars or had in fact unjustly discriminated against the plaintiff, and entirely eliminated from the consideration of the jury the question of whether the discrimination, if any, was due to the enforcement or the violation of a rule adopted by the shipper in case of car shortage; and the liability for failure to furnish and the liability for discrimination were interwoven in the portion of the charge upon which error is assigned. Without going over the ground again we may say that we have laid down the rule of law applicable to the case; we have pointed out that where the discrimination arose by reason of the enforcement of a rule the shipper cannot in any action at law recover for such damages without first having proceeded before the interstate commerce commission. In the portion of the charge now being considered the trial judge instructed the jury that he could recover if there was discrimination in fact and took no account of the question of the adoption of a rule. In this the court was in error. This question not only went to the right to recover but it also went to the jurisdiction of the court as we have pointed out.

The trial judge instructed the jury:

"The defendant was only bound to have on hand a sufficient supply of cars to meet the normal demands of the trade. It was not obliged to have a sufficient supply on hand to meet abnormal and unexpected conditions. But the normal demand of the trade is not to be estimated by the number of cars needed when the normal demand is least, but by the number when the normal demand is heaviest, in respect to a commodity, such as logs, where there are certain well known seasons during which the normal demand for log transportation is practically the same and heavier than at other times. And while the number of cars needed in each of the months of these seasons may be taken into consideration in determining the number needed to supply the demand during all of

the logging season, the number needed during the other months of the year outside of the logging season—the summer months, in this case—is entitled to little consideration in determining what number of cars is needed to supply the normal demand of the trade."

The other assignment of error relates to that portion of the above quoted instruction after the first two sentences. This instruction followed the rule laid down by the court of last resort of Kentucky in the case of *Illinois Cent. R. Co.* v. *Coal & Coke Co.*, 150 Ky. 489 (150 S. W. 641, 44 L. R. A. [N. S.] 543, Ann. Cas. 1914C, 1255), and substantially contains the language of that court in deciding that question. We think it states the correct rule. In *Shoptaugh* v. *Railroad Co.*, 147 Mo. App. 17 (126 S. W. 752), it was said:

"Taking up the appeal on the merits, we hold it would have been a good defense if an extraordinary increase of business on defendant's line, which could not have been anticipated and provided for by using judgment and diligence, had prevented defendant from furnishing the cars. Railroad companies are expected to be prepared with an equipment necessary to handle the average traffic over their lines and such an increase as would be expected by managers of experience, *for the volume of traffic will vary with the seasons and general business conditions. These contingencies ought to be provided for and the law requires them to be;* but a railroad carrier need not be ready to handle any accession of business, however great, which some unforeseeable condition may cause; and in case an extraordinary traffic occurs and consequent congestion of freight, the carrier must distribute its cars at the various stations in proportion to their needs."

In the case of *State* v. *Railroad Co.*, 71 Neb. 593 (99 N. W. 309), it was said:

"It is the duty of a railroad company to provide itself with all the instrumentalities and facilities necessary to carry on the business for which it is organ-

ized. It must furnish the necessary cars to transport the goods which are offered to it for carriage, but to this rule there is an exception. When the carrier has furnished itself with the appliances necessary to transport an amount of freight which may, in the usual course of events, be reasonably expected to be offered to it for carriage, *taking into consideration the fact that at certain seasons more cars are needed,* it has fulfilled its duty in that regard, and it will not be required to provide for such a rush of grain or other goods for transportation as may only occur in any given locality temporarily or at long intervals of time."

The trial judge very carefully guarded his instruction and confined the rule to the *normal* demand of seasonal shipments. The defendant was bound to know that while the snow was on logs would be gotten out and offered for shipment; that more would be offered for shipment during that season of the year than at other seasons, was well known to the officers and agents of defendant, as this record discloses. The carrier is bound to know that at certain seasons of the year there will be movements of certain seasonal commodities, and was bound to anticipate and provide for such demand. There are certain portions of the State where fruit is raised in abundance and offered for shipment to the market. Clearly the carrier would not discharge either its common-law or its statutory duty by providing itself with only equipment sufficient to transport such fruit if given the entire year so to do. It must have sufficient equipment to transport such fruit when the *normal* demand is the greatest; and this is true and must be true of all seasonal freight. Any other rule would refuse to the shipper of seasonal commodities the markets of the country when such markets are open and available. We do not mean to say that the carrier is bound to provide for abnormal conditions, for unforeseen and unprecedented demands. In the instant case, the jury was told:

"The defendant was only bound to have on hand a sufficient supply of cars to meet the normal demands of the trade. It was not obliged to have a sufficient supply on hand to meet abnormal and unexpected conditions."

Further instructions were not requested and we discover no other error in the charge except the one noted. For this error the judgment must be reversed and a new trial granted, with costs to defendant.

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.