DETROIT UNITED RAILWAY *v.* OAKLAND CIRCUIT JUDGE.

1. CARRIERS—PASSENGER RATES—RATES FIXED BY FRANCHISE SUPERSEDED BY STATUTE.

Under the provisions of the Smith act (Act No. 382, Pub. Acts 1919), the rights of municipalities under their franchise contracts with railroad companies in regard to rate of fare for transportation of passengers were divested except such as were retained by the proviso in section 2.

2. SAME—COURTS—PUBLIC UTILITIES COMMISSION—JURISDICTION.

When complaint is made of the rate fixed by a carrier in the tariff schedule filed with the public utilities commission, of which the rules and regulations form a part, relief must be sought through the commission; when the claim is made that the carrier has charged a rate in excess of that fixed in the schedule, resort may be had in the first instance to a court.

3. SAME—COURT WITHOUT JURISDICTION WHERE No COMPLAINT MADE TO COMMISSION.

The circuit court for the county of Oakland was without jurisdiction to restrain the enforcement of the rate fixed by an electric railway company in a schedule filed with the public utilities commission for through fare between the village of Birmingham and the 6-mile road in the city of Detroit because in excess of the total of the local fares authorized by Act No. 382, Pub. Acts 1919, where complaint had not first been presented to, and passed upon by, said commission as provided for in section 8, Act No. 419, Pub. Acts 1919.   WIEST and BIRD, JJ., dissenting.

Mandamus and prohibition by the Detroit United Railway to compel Frank L. Covert, circuit judge of Oakland county, to vacate an order granting an injunction and to refrain from exercising jurisdiction in said case.   Submitted May 4, 1921.   (Calendar No. 29,689.)   Writs granted July 19, 1921.

On legislative power to fix carrier's rates, see notes in 33 L. R. A. 179.

On jurisdiction of public utilities commission over rates as limited by constitutional or statutory power of a municipality to regulate utilities, see note in L. R. A. 1918D, 315.

*Stevenson, Carpenter & Butzel* and *H. E. Spalding,* for plaintiff.

*Glenn C. Gillespie, John J. Gafill,* and *Aaron Levinson,* for defendant.

SHARPE, J.    Under the provisions of Act No. 382, Public Acts of 1919 (hereafter called the Smith act), as construed by this court in *Attorney General* v. *Railway,* 210 Mich. 227, the plaintiff road is permitted to charge a rate of fare of two cents per mile. Such rate is, however, subject to the following proviso, found in section 2 of the act:

"*Provided,* That this act shall not apply to the rates of street or interurban railroads charged in the transportation of passengers within the limits of cities, or within a distance of five miles of the boundaries thereof."

In such territory, the rates are as fixed by the local franchises or contracts.

The 10th section of the railroad commission act (2 Comp. Laws 1915, § 8118a), which was not affected by the supplemental act (Act No. 419, Public Acts of 1919) creating the Michigan public utilities commission, requires the plaintiff to file with the commission "schedules showing all rates, fares and charges for transportation, both of passengers and property" which "shall plainly state the places between which property and passengers will be carried" and "any rules or regulations which in anywise change, affect or determine any part of or the aggregate of such aforesaid rates, fares and charges or the value of the service rendered to the passengers." In pursuance of this requirement, plaintiff filed with the commission its "local passenger tariff" schedule, to be effective on May 4, 1920, naming one way and round trip fares between points on its Pontiac division. Among the rules and regulations appears the following:

"Fare Splitting Prohibited:—The tariff fares shown herein must be paid from the point where passenger boards train to final destination and may not be avoided by the payment of the fare to or from an intermediate point or points so as to make the combination of fares less than the fare shown herein for the entire ride.   Should a passenger desire to proceed on the same train to any point beyond which the fare already paid will entitle him to ride, such passenger must pay an additional sum sufficient with the sum already paid to constitute the through fare shown by this tariff from the station where the train was originally boarded to final destination.   This rule applies to all passengers including passengers riding to or from points outside the corporate limits of any municipality upon a car making a continuous trip between such points, and each such passenger shall be regarded as a through passenger between such points and shall be charged and shall pay the through fare shown by this tariff from or to the said point outside said municipality to or from the station mentioned or designated by said company in said municipality."

Under this regulation, plaintiff insists that through passengers must pay the through rate of fare fixed in its tariff schedule.

On March 31, 1921, the village of Birmingham, through which plaintiff's Pontiac division passes, filed a bill of complaint in the Oakland circuit court, averring that such requirement was unlawful and unauthorized in that it prohibited through passengers between Birmingham and the 6-mile road in the city of Detroit from taking advantage of the local fares between intermediate points, and praying for an injunction restraining the collection of such through fare.   On the filing of the bill an order to show cause why a preliminary injunction should not issue was granted and, after an answer thereto had been filed and a hearing had thereon, such an injunction was issued.   A mandamus is now sought to compel its dissolution.

We are met at the outset by a claim of lack of jurisdiction on the part of the Oakland circuit court. It is thus stated by plaintiff's counsel in their brief:

"The questions sought to be raised by the village of Birmingham in its injunction suit go to the legality of a rate of fare fixed in a passenger tariff duly filed according to law with the public utilities commission, and are therefore questions over which that commission alone has original jurisdiction, and which can be considered by the courts only in an action brought to review the determination of the commission thereon."

This claim is based upon the several provisions of the Michigan railroad commission act (2 Comp. Laws 1915, chap. 155, § 8109 *et seq.*) and Act No. 419, Pub. Acts of 1919, supplemental thereto. The latter act confers the powers of the old commission and certain additional on the Michigan public utilities commission thereby created. The provisions relied on may be briefly stated. The 10th section requires the filing of tariff schedules and rules and regulations, and has been referred to. By subdivision (*b*) of the same section, no changes can be made in any such schedule except upon notice to the commission and the filing of a new or supplemental tariff showing such changes. Section 25 (§ 8133) provides that all rates and fares fixed by the commission and all regulations prescribed by it shall be *prima facie* lawful and reasonable. Section 26 (§ 8134*a*) provides that any person dissatisfied with any order of the commission fixing any rate, fare or regulation may commence an action in the circuit court of the county of Ingham to vacate or set aside such order, and an appeal from the decision then made may be taken to the Supreme Court. Subdivision (*f*) of the 10th section (§ 8118) provides that no carrier shall engage in such transportation without filing such schedule and that it shall not "charge or demand or collect or receive a greater or

less or different compensation" than that specified therein.    Section 8 of Act No. 419, Public Acts of 1919, provides:

"Upon complaint in writing that any rate, classification, regulation or practice charged, made or observed by any public utility is unjust, inaccurate, or improper, to the prejudice of the complainant, the commission shall proceed to investigate the matter."

Provision is made for a full hearing upon such complaint.

"Upon the completion of any such hearing, the commission shall have authority to make an order or decree dismissing the complaint or directing that the rate, charge, practice or other matter complained of, shall be removed, modified or altered, as the commission deems just, equitable and in accordance with the rights of the parties concerned."

The schedule filed fixes a definite through rate between Birmingham and Detroit.    No claim is made that a different rate from that so fixed is being collected.    The grievance of which the village complains is that such rate violates the provisions of the franchises and the statute.    This is apparent from the bill of complaint.    In the 15th paragraph it is alleged that the defendant, in disregard of the exception contained in section 2 of the Smith act, and ignoring the express agreements contained in the franchise contracts, "placed into effect a certain schedule of passenger fares, which, among other charges, provided for a straight charge of two cents per mile" from the village of Birmingham to the city limits of Detroit. In the 17th paragraph it is said,

"that said schedule of passenger fares, as charged by the said defendant, utterly disregards the express provisions of the contracts as to such rates of fare as contained in said franchises, and is not only unlawful and not authorized by the provisions of Act No.

382 of 1919, but is expressly prohibited by the laws of the State of Michigan."

While it may be said that the plaintiff, in these allegations, complains of a violation of the contract rates fixed in the several franchises, it must be borne in mind that the rights of the several municipalities under such contracts were divested by the Smith act, except such as are retained by the proviso in section 2, heretofore quoted. *Attorney General* v. *Railway, supra.* The question presented is, whether the through rate fixed in the tariff schedule is a proper one under the provisions of the act.

It is conceded that the commission has no power to fix passenger rates of fare. Plaintiff, however, contends that such rates are not fixed in the Smith act; that it merely prescribes the basis (two cents per mile) upon which those rates are to be fixed, and that the commission has exclusive jurisdiction to determine in the first instance whether the rates fixed in the schedule conform to the statute, that is, whether they are proper or improper.

We are of the opinion that when complaint is made of the rate fixed in the tariff schedule, of which the rules and regulations form a part, relief must be sought through the commission; when the claim is made that the carrier has charged a rate in excess of that fixed in the schedule, resort may be had to a court in the first instance.

The Smith act does not fix the rate to be charged by plaintiff. It provides in effect that it shall be lawful for the plaintiff company to charge a rate of fare not exceeding two cents per mile, subject, however, to the provision as to the rates in cities and within five miles of the boundaries thereof. The basis on which the rate shall be fixed is thus provided by the statute. Pursuant thereto, the plaintiff filed its schedule with the commission and the same became

operative.    Whether such schedule conforms to the statute is, we think, for the commission to determine and can only be considered by a court on appeal from its determination in the manner provided by law.

We reach this conclusion from the language of the acts.    Section 10 makes it obligatory on all carriers to file a schedule which shall plainly state the rate, or fare, which passengers must pay to ride between the different places named therein.    The schedule must also contain any rule or regulation which shall "in anywise change, affect or determine" any part of or the aggregate of such rates or fares or the value of the service rendered the passenger.    The rule or regulation in question clearly does affect and determine the aggregate of the fare charged.    The schedule fixes the through rate from Birmingham to Detroit at 22 cents. This is a greater amount than is obtained by adding together the local fares.    ·The rule explains the reason for this and thus becomes a part of the schedule.    Section 8 of Act No. 419 provides that if complaint be made to the commission that any rate charged or regulation made by any public utility is "unjust, inaccurate, or improper," it shall proceed to investigate the matter.    'The duty is thus imposed on the commission to investigate all complaints relating to the rate fixed in the schedule or the regulation affecting or determining it and, until the aid of the commission has been invoked and its determination expressed by an order made by it, the courts have no jurisdiction in the matter.    Provision is made for a review of any order of the commission in section 26 (8134*a*), but it is significant that such action must be brought in the circuit court, in chancery, for the county of Ingham.    By the procedure thus provided, conflicting decisions of courts are avoided.

This conclusion is, we believe, in accord with the policy of the State in its regulation of public utilities

as expressed in these acts. In no other way can uniformity be secured. ⸴On application to the commission, a ruling will be obtained which will control the company in its operation on all of its lines affected by the statute. Otherwise, when a road passes through several counties, the circuit courts thereof may differ as to the rights of the company under the statute and much confusion result. We think one of the purposes of the legislature in creating the commission and defining its powers was to provide against such contingencies.

⸴ Our Michigan cases all deal with freight rates and those of telephone companies. The commission has authority to fix such rates and also to determine whether they are reasonable or unreasonable. The reasoning of the court in several cases, however, lends support to the conclusion we have reached.

In *Wolverine Brass Works* v. *Southern Pacific Co.,* 187 Mich. 393, the plaintiff sued—

"to recover back a portion of certain freight charges paid by the plaintiff on certain shipments of freight. The plaintiff placed one construction upon the published tariffs, which, if correct, would entitle it to the rate of $1.75 per 100 pounds. The defendant placed another construction upon the tariffs, which, if correct, would require a rate of $2.60 per 100 pounds."

It was held that the court—

"had jurisdiction to determine whether there had been an overcharge under the tariffs as fixed and published."

Mr. Justice MOORE, speaking for the court, quotes approvingly and at length from *Gimbel Brothers* v. *Barrett,* 215 Fed. 1004. In that case the claim was made "that a carrier has charged more than or otherwise departed from the published rate." It was said:

"To hold that the court cannot determine the fact of whether the published rate or more or less than the

published rate has been collected in a given case is to take from the courts the jurisdiction committed to them by congress.   Nor is this result changed by the fact of whether the rate be one which is fixed by an act of congress, by a tariff or schedule of rates fixed by being filed by the carrier, or by a ruling by the commission.   In any case, the fact of departure from it must be a fact within the province of the court to find, or it can never proceed to render judgment in any case."

In the following cases the question of jurisdiction arose in controversies under the telephone act (Act No. 206, Public Acts of 1913, 2 Comp. Laws 1915, § 6689 *et seq.*) : *City of Owosso* v. *Telephone Co.,* 185 Mich. 349; *Traverse City* v. *Telephone Co.,* 195 Mich. 373; *City of Cadillac* v. *Telephone Co.,* 195 Mich. 538; *Oceana, etc., Telephone Co.* v. *Telephone Co.,* 205 Mich. 662.

In the opinion in the *Owosso Case,* written by Justice STEERE and concurred in by three of the Justices, it is said:

"The broad power delegated by statute to that commission impliedly abrogates or limits in a large degree first instance resort to the court by both statutory and common-law remedies previously available, while the act carefully preserves the right of appeal to the courts for final review."

The other four Justices concurred in the result reached on the ground that the bill failed to disclose a cause for equitable relief.

In the *Traverse City Case* it was said:

"The scheme and purpose of plaintiff's bill is to enjoin defendant from exacting rates in excess of those nominated in the franchise."

In the opinion it is pointed out that jurisdiction is assumed only for the purpose of "enforcing existing contract obligations which under existing conditions the offending party may not repudiate."

In the *Cadillac Case* the bill was filed to restrain the defendant from increasing its rates in excess of those provided for in an ordinance and in violation of the provisions of the telephone act.    The court said:

"The complaint is of rates charged contrary to contract and in violation of the statute.    Plaintiff has failed in proof upon the first; as to the latter, original jurisdiction to hear and determine the question of rates has been committed to the commission by legislative enactment, with ample provision for review by the courts.    We find no occasion for the courts to interfere with the prescribed course by prematurely assuming jurisdiction."

In the *Oceana Case* it appeared that an application had been filed with the commission to compel physical connection between the plaintiff and defendant.    The exclusive jurisdiction of the commission to act in the first instance was upheld.

The language employed in *Robinson* v. *Railroad Co.,* 222 U. S. 506 (32 Sup. Ct. 114), is instructive.    The schedule filed by defendant fixed an extra rate of 50 cents per ton on coal if loaded from a wagon instead of from a tipple.    An action was brought to recover the excess so paid.    No complaint that such charge was unlawful had been made to the interstate commerce commission.    After referring to the provisions of the act relative to the filing of tariff schedules, it was said:

"When the purpose of the act and the means selected for the accomplishment of that purpose are understood, it is altogether plain that the act contemplated that such an investigation and order by the designated tribunal, the interstate commerce commission, should be a prerequisite to the right to seek reparation in the courts because of exactions under an established schedule alleged to be violative of the prescribed standards.    And this is so, because the existence and exercise of a right to maintain an action of that character, in the absence of such an investiga-

tion and order, would be repugnant to the declared rule that a rate established in the mode prescribed should be deemed the legal rate and obligatory alike upon carrier and shipper until changed in the manner provided, would be in derogation of the power expressly delegated to the commission, and would be destructive of the uniformity and equality which the act was designed to secure."

The court quoted approvingly from the opinion in *Texas & Pacific R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 441 (27 Sup. Ct. 350, 9 Ann. Cas. 1075), in which, in determining that complaints affecting the schedule itself must first be submitted to the commission, it was said:

"This must be, because, if the power existed in both courts and the commission to originally hear complaints on this subject, there might be a divergence between the action of the commission and the decision of a court. In other words, the established schedule might be found reasonable by the commission in the first instance and unreasonable by a court acting originally, and thus a conflict would arise which would render the enforcement of the act impossible."

It was further said that if a court should find for the plaintiff—

"the confusing anomaly would be presented of a rate being adjudged to be violative of the prescribed standards and yet continuing to be the legal rate, obligatory upon both carrier and shipper."

In the quite recent case of *Anderson* v. *Railway Co.*, 208 Mich. 424, this court had occasion to consider the effect of a rule of the defendant company relative to the distribution of freight cars among shippers. The railroad company was engaged in interstate commerce. The authorities as to the jurisdiction of the interstate commerce commission and the courts to determine such matters are reviewed at length by Mr. Justice FELLOWS. The conclusion was reached that if the—

"distribution has been made pursuant to a rule of the carrier and in conformity with it, the shipper must first proceed before the interstate commerce commission to establish the discriminatory character of the rule; but that where the discrimination is caused by a breach of the rule, and the discrimination results from its nonobservance, then the State courts have jurisdiction in an action brought by the shipper to recover damages occasioned by such discrimination."

We therefore conclude that the circuit court for Oakland county was without jurisdiction to grant the injunction complained of and that it must be dissolved. An order will be entered accordingly, with costs against the village of Birmingham.

STEERE, C. J., and FELLOWS, STONE, and CLARK, JJ., concurred with SHARPE, J.   MOORE, J., did not sit.

WIEST, J. (*dissenting*).   I cannot agree with Mr. Justice SHARPE.   Electric railway maximum passenger rates are fixed by franchise contracts or by law and not by carriers or by the public utilities commission.   Under and in accordance with the law fixing maximum passenger rates, schedules of rates thereunder, promulgated by the carrier, are required to be filed with the commission.   Whether such passenger rates, with accompanying rules and regulations affecting the same, filed with the commission violate the law is a judicial question of which courts have not been divested by any provision I have been able to find in the statute.   It is significant, but not of controlling importance, that the legislature at the last session enacted a law for the express purpose of conferring such jurisdiction upon the commission.   It is known as House Enrolled Act No. 94 (Act No. 115, Pub. Acts 1921), and its title reads:

"An act to fix the rates of fare for the transportation of passengers, within this State, which may be charged by any interurban railroad, and to provide

for the regulation of such rates of fare by the Michigan public utilities commission."

The query at once arises, Why this enactment was deemed necessary if the commission had such power under existing law?

The common law power of courts is not to be surrendered in any particular unless divested by positive law and the finger can be placed upon such law.  I find no authority to the exclusion of judicial power vested in the commission with reference to passenger rates.  Such power is expressly vested in the commission over freight rates.

Plaintiff admits that the question involved in the suit brought by the village is whether a certain rate in the plaintiff's tariff on file is a legal or illegal rate. This is a judicial question, within the inherent jurisdiction of the courts of this State, and while such jurisdiction may not be one of first instance when the act of the last session of the legislature takes effect, the question was properly before the court in the Oakland circuit. To take express provisions of the statute granting the commission power of regulation over freight rates, rules and regulations, as a premise and reasoning therefrom that the commission by intendment stands as well as a resort of first instance upon the question of the legality of passenger rates is to destroy the clear exception manifested in the law itself.

The bill filed by the village of Birmingham in the Oakland circuit states a case beyond the administrative power of the public utilities commission and clearly within the jurisdiction of the court.

The relief asked by plaintiff should be denied.

BIRD, J., concurred with WIEST, J.