### FEDERAL GRAVEL CO. *v.* DETROIT & MACKINAC RAILWAY CO.

1. PLEADING—FACTS ALLEGED TAKEN AS TRUE IN PASSING ON MO-
   TION TO DISMISS.
   Facts alleged in bill of complaint must be accepted as true for purpose of passing on defendants' motion to dismiss.

2. CORPORATIONS—CORPORATION MUST BE TREATED AS DISTINCT LE-
   GAL ENTITY THOUGH ORGANIZED FOR ILLEGAL PURPOSE.
   In suit by gravel company to enjoin railroad company and another from engaging in unlawful competition through "dummy" corporation, and for accounting to ascertain damages already sustained through indirect rebating, said "dummy" corporation must be treated, as it is in fact, as a legal entity entirely separate from railway company, although its incorporation may have been for illegal purpose.

3. CARRIERS—REBATING.
   Any device by which freight rate is reduced below rate given in published schedule is one for giving rebate.

4. SAME—"RATE" CHARGED.
   Net amount which carrier receives from shipper fixes "rate" charged.

On right of carrier to grant rebates or allowance to shipper for use of latter's tracks, see annotation in 26 L. R. A. (N. S.) 551.

5. SAME—SHIPPER AGGRIEVED BY BREACH OF TARIFF SCHEDULE MAY
OBTAIN INJUNCTIVE RELIEF DIRECT FROM COURT.
  When unjust discrimination against shipper results from rebat-
    ing to competitor, which is breach and nonobservance of stat-
    ute and of fixed tariff schedule, aggrieved party may apply
    direct to court and obtain injunctive relief (2 Comp. Laws
    1915, § 8155, 49 USCA § 22).

6. SAME—JURISDICTION OF COURT.
  Suit by gravel company to enjoin railroad company and another
    from engaging in unlawful competition through "dummy"
    corporation, and for accounting for damages already received
    through indirect rebating, states case of which equity court
    has original jurisdiction, and defendants' motion to· dismiss
    for want of jurisdiction was properly denied.

Appeal from Bay; Houghton (Samuel G.), J.
Submitted January 22, 1929. (Docket No. 35, Cal-
endar No. 34,060.) Decided September 4, 1929.

Bill by the Federal Gravel Company against the
Detroit & Mackinac Railway Company and the Al-
pena Gravel Company to enjoin discrimination in
freight rates and for an accounting. From an or-
der denying motion to dismiss plaintiff's · bill, de-
fendants appeal. Affirmed.

*Harry C. Howard,* for plaintiff.

*Carl R. Henry* and *Guy D. Henry* (*Sherman T.
Handy,* of counsel), for defendants.

NORTH, C. J. The defendants' motion to dismiss
the bill of complaint was denied by an order of the
circuit judge. Leave to perfect this appeal from
such order was granted to the defendants. The
plaintiff owns and formerly operated two gravel
pits on the line of the Detroit & Mackinac Railway
Company; and had invested in such enterprise up-
wards of $178,000. The railway company also

owned and operated a gravel pit. Originally this pit was operated to supply its own needs for ballast, etc.; but subsequently the railway company entered into the commercial production of gravel at this pit and increased its investment in the enterprise to upwards of $145,000. When it developed that the railway company could not legally engage in the gravel business commercially, it caused the Alpena Gravel Company to be incorporated under the laws of Michigan, and leased its gravel pit and equipment to the new company for $1.00 per year, and thereafter, by operating through this new organization, continued to produce and sell gravel. In 1926 or later some different arrangement was made about the payment of rent or royalties by the Alpena Gravel Company to the railway, but the details of this arrangement are not set forth in the bill of complaint. The greater part of the gravel marketed by the Alpena Gravel Company was sold below cost of production, but this loss was compensated by the freight revenue received by the railway company incident to the shipments of the Alpena Gravel Company. The railway company manipulated freight rates in favor of the Alpena Gravel Company, supervised and directed the operation of that company, furnished lumber to it, maintained and improved its plant, and in part kept its books. The Alpena Gravel Company sold gravel at 5 cents per ton that could not be produced at less than 35 cents per ton. The deficit resulting from this manner of conducting its business was, from time to time, paid to it by the railway company under the guise of a purchase and payment for ballast, but such payment was far in excess of the market price of the ballast used by the defendant railway. Some of the officers of the Alpena Gravel Company are also officers or employees

of the railway company, and the latter's general manager controls the affairs of the Alpena company. The plaintiff had established a prosperous business, but, because of the unfair and unlawful means of carrying on the business of the Alpena Gravel Company, the plaintiff was not able to withstand the competition and was compelled to close its plants, one in 1924 and the other in 1925; though a small amount of gravel was marketed by the plaintiff in 1926 and in 1927. The Alpena Gravel Company was a so-called "dummy company" organized by the defendant railway as a means of enabling it to unlawfully continue in the gravel business in a commercial way and in direct competition with the plaintiff company. This course of conduct on the part of the defendants was prompted by malice against the plaintiff and engaged in for the express purpose of ruining the plaintiff's business by competition and obtaining a monopoly of the gravel business along the line of the defendant railway company. The defendants are now engaged in and will continue to be engaged in these unlawful methods of competition to the great damage of the plaintiff unless enjoined by the order and decree of this court from so doing.

The foregoing is a summary of the facts alleged in the bill of complaint, and must be accepted as true for the purpose of passing upon defendants' motion to dismiss. The plaintiff seeks injunctive relief and an accounting incident to ascertaining the amount of its damages already sustained. The theory of the plaintiff's claim for relief is thus stated in its brief:

"Appellee is not seeking in this proceeding to correct the level of that (the freight) rate. There is no administrative question involved in this issue.

* * * The plaintiff claims that its right to property has been invaded, that the defendant railroad is a public highway, charged under the common and statutory law with seeing that individuals have equal rights, both in respect to service and charges, and it is to enjoin the violation of those rights that the bill is filed. * * * This bill is filed to restrain an unlawful discrimination 'by the device of operating through a dummy company.' "

Briefly stated, the relief sought is:

"(1) That the defendant railroad company be enjoined from:

"(a) Granting any concessions to the defendant, Alpena Gravel Company.

"(b) Discriminating against the plaintiff in favor of the defendant gravel company.

"(c) Directly or indirectly engaging in the production and sale of gravel for commercial purposes.

"(2) That the defendant Alpena Gravel Company be enjoined from:

"(a) Receiving any concessions from the defendant railroad company.

"(b) Using any of the property of the defendant railroad company in relation to the production and sale of commercial gravel, without paying a reasonable rent therefor.

"(c) Depleting said Big Cut pit without paying adequate royalties therefor.

"(3) That said defendant railroad company be required to come to an accounting with the plaintiff, etc."

In the defendants' brief the grounds for their motion to dismiss are stated as follows:

"(1) In so far as the allegations in the bill relate to the propriety of freight rates, unjust discriminations, undue and unreasonable preference, conces-

sions and rebates, the court is without jurisdiction to hear and determine such allegations.

"(2) In so far as the allegations in the bill relate to the acts of defendant railway company, alleged to be in excess of its corporate powers, such questions are open to inquiry solely at the suit of the State of Michigan.

"(3) In so far as the allegations of the bill relate to an alleged violation of commodities clause of the interstate commerce act, such inquiries are open only before the interstate commerce commission or at the suit of the attorney-general of the United States."

The motion and reasons assigned in support thereof present the question of jurisdiction. The plaintiff claims that the facts and circumstances alleged make a case of which the circuit court in chancery has original jurisdiction. Stripped of details, the bill charges that the plaintiff has sustained a damage to its property because in the manner of shipping gravel the defendant railway has unlawfully given to the Alpena Gravel Company an undue and unreasonable advantage and has subjected the plaintiff to an undue and unreasonable disadvantage and prejudice; that this has been accomplished by an indirect method of rebating to the Alpena Gravel Company a portion of the cost of producing and shipping its gravel as outlined in the bill of complaint.

No claim is made by the defendant railway company that it has a right to engage in the gravel business as a commercial enterprise. While the Alpena Gravel Company is alleged to be a "dummy corporation," it in fact is a legal entity entirely separate from the railway company and for the purpose of this case must be treated as such, notwithstanding its incorporation may have been prompted in

part by a desire and by an intention of those interested to use it as a device to accomplish an illegal purpose. It has been held by highest authority that *any device* by which the freight rate is reduced below the rate given in the published schedule is one for giving a rebate. *Chicago, etc., R. Co.* v. *United States,* 84 C. C. A. 324 (156 Fed. 558, 26 L. R. A. [N. S.] 551), affirmed by a divided court (212 U. S. 563, 29 Sup. Ct. 689). In the above case the defendant attempted to accomplish a discrimination by paying a certain sum per car for the use of the private track of the shipper in hauling freight from his plant to the carrier's track. This was held to be an illegal rebate. A railroad company which organized another company to make a loan to a coal company at a lower interest rate than the railroad company paid for the money, to obtain exclusive tonnage privilege, was held guilty of rebating. *Vandalia R. Co.* v. *United States,* 141 C. C. A. 469 (226 Fed. 713). And likewise, a railroad company which leased ground for substantially one-tenth of its rental value to a dealer in scrap iron in consideration of receiving the lessee's shipments at regular rates with the understanding that the reduced rental was in effect a concession on freight charges was held to have given the lessee a preference or advantage by allowing a rebate or concession. *Cleveland, etc., R. Co.* v. *Hirsch,* 123 C. C. A. 145 (204 Fed. 849). See, also, *Wisconsin Cent. R. Co.* v. *United States,* 94 C. C. A. 444 (169 Fed. 76).

The net amount which a carrier receives from a shipper and retains fixes the "rate" charged. *Chicago, etc., R. Co.* v. *United States, supra.*

That rebating may be accomplished by indirect methods as well as by direct has been decided in so many well-reasoned cases that it is not necessary to

give other illustrations or cite further authorities. The schemes by which it has been attempted are as numerous and varied as human ingenuity can devise. The plan resorted to in the instant case as set forth in the bill of complaint is not at all unusual. The Michigan statute (2 Comp. Laws 1915, § 8109 *et seq.*) provides:

"(8124) Sec. 16. If any common carrier * * * shall, directly or indirectly, by any special rate, rebate, drawback, * * * or by any other device whatsoever, charge, * * * a greater or less compensation * * * than that prescribed in the public tariffs then in force * * * such common carrier shall be deemed guilty of unjust discrimination. * * *

"(8125) Sec. 17. It shall be unlawful for any common carrier, subject to the provisions of this act, to make or give any undue or unreasonable preference or advantage to any particular person * * * or locality or any particular description of traffic in any respect whatsoever, or to subject any particular person * * * or locality or any particular description of traffic to any undue or unreasonable disadvantage or prejudice in any respect whatsoever.

"(8126) Sec. 18. It shall be unlawful for any person * * * to accept or to receive any rebate, concession or discrimination in respect to transportation of any property wholly in this State or for any service in connection therewith, whereby any such property shall, by false billing, false classification, false weighing or any other device whatsoever, be transported at a less rate than that named in the published tariffs."

No complaint is made in this case that there is anything wrong or unjust with the scheduled freight rate affecting these parties or with any rule or regulation relative thereto as the same are now estab-

lished and on file with the Michigan utilities commission; but instead that, by rebating, a freight rate less than that specified in the tariff schedule is given to the Alpena Gravel Company resulting in an unjust discrimination against the plaintiff. In *Detroit United Railway* v. *Oakland Circuit Judge,* 215 Mich. 275, it is said (syllabus):

"When complaint is made of the rate fixed by a carrier in the tariff schedule filed with the public utilities commission, of which the rules and regulations form a part, relief must be sought through the commission; when the claim is made that the carrier has charged a rate in excess of that fixed in the schedule resort may be had in the first instance to a court."

In *Anderson* v. *Railway Co.,* 208 Mich. 424, this court held (quoting syllabus):

"In an action for failure to furnish sufficient cars for interstate shipments, where unjust discrimination is alleged, if such distribution has been made pursuant to a rule of the carrier and in conformity with it, the shipper must first proceed before the interstate commerce commission to establish the discriminatory character of the rule; but if the discrimination was caused by a breach of the rule and resulted from its nonobservance, then the State courts have immediate jurisdiction."

The discrimination of which the plaintiff complains arises from a breach and a nonobservance of a regulation. By charging a less rate to plaintiff's competitor in the gravel business, the same relative financial disadvantage is suffered by the plaintiff as would have been experienced by it had the plaintiff been required to pay an excessive freight rate to the railroad company. The damage sustained by a shipper in consequence of paying excessive freight rates can be recovered by an original suit instituted

in the courts of this State. *Fletcher Paper Co.* v. *Railway Co.*, 198 Mich. 469. It should likewise be held that when the unjust discrimination of which complaint is made results from rebating, which is a breach and nonobservance of the statute and of the fixed tariff schedule, the aggrieved party may apply direct to the court and obtain injunctive relief. The granting of such relief under such circumstances is provided in the statute itself.

"Sec. 47. In addition to all the other remedies provided by this act for the prevention and punishment of any and all violations of the provisions hereof, and of all orders of the commission, the commission, and likewise any person, firm or corporation interested, may compel compliance with the provisions of this act and with the orders of the commission by proceedings in mandamus, injunction or by other appropriate civil remedies." 2 Comp. Laws 1915, § 8155.

The *Anderson Case* (*supra*) arose under the interstate commerce act. Section 22 of that act provides:

"And nothing in this act contained shall in any way abbreviate or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." U. S. Comp. Stat. (1918) § 8595 (49 USCA § 22).

For the purpose of determining whether the court had original jurisdiction in the present case, section 47 of the Michigan act is substantially the same as section 22 of the Federal act, under which it has been held:

"But if the carrier's rule, fair on its face, has been unequally applied, and the suit is for damages occasioned by its violation or discriminatory enforcement, there is no administrative question in-

volved, the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits, though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the State or Federal courts.'' *Pennsylvania R. Co.* v. *Puritan Coal Co.,* 237 U. S. 121 (35 Sup. Ct. 484).

In *Wolverine Brass Works* v. *Southern Pacific Co.,* 187 Mich. 393, Justice MOORE, writing for this court, quoted with approval from *Gimble Bros.* v. *Barrett* (D. C.), 215 Fed. 1004, the following:

"To hold that the court cannot determine the fact of whether the published rate or more or less than the published rate has been collected in a given case is to take from the courts the jurisdiction committed to them by congress. Nor is this result changed by the fact of whether the rate be one which is fixed by an act of congress, by a tariff or schedule of rates fixed by being filed by the carrier, or by a ruling by the commission. In any case, the fact of departure from it must be a fact within the province of the court to find, or it can never proceed to render judgment in any case." Citing *St. Louis, etc., R. Co.* v. *Roff Oil & Cotton Co.,* 61 Tex. Civ. App. 190 (128 S. W. 1194); *Western, etc., R. Co.* v. *White Provision Co.,* 142 Ga. 246 (82 S. E. 644).

Under the rule established by the adjudicated cases, as well as under the provisions of the statute, it must be held that the plaintiff's bill of complaint states a case of which the court had original jurisdiction. The order denying the defendants' motion to dismiss is affirmed, and the case remanded to the lower court for further proceedings therein, with costs to the appellee.

FEAD, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred. POTTER, J., did not sit. The late Justice FELLOWS took no part in this decision.