## LA SALLE TOWNHOUSES COOPERATIVE ASSOCIATION v THE DETROIT EDISON COMPANY

### OPINION OF THE COURT

1. COURTS—JURISDICTION—PUBLIC SERVICE COMMISSIONS—VIOLATIONS OF TARIFFS OR REGULATIONS—INVALID RATES.

   A customer may sue a utility company in a court of general jurisdiction when the customer contends that damage has resulted from a violation of a tariff or regulation or when the customer contends that the rates approved by the Public Service Commission are invalid.

2. PUBLIC SERVICE COMMISSIONS—COURTS—JURISDICTION—TARIFF AND CODE PROVISIONS.

   A party aggrieved by the provisions of a tariff or code should seek relief first by an attack upon those provisions before the Public Service Commission and from it to the Ingham County Circuit Court.

3. PUBLIC SERVICE COMMISSIONS—APPLICATION OF UTILITY RATES.

   Customers who claim that the rates applicable to them should be different from those approved by the Public Service Commission and who do not directly challenge the validity of the rates approved by the commission should seek relief from the Public Service Commission.

4. PUBLIC SERVICE COMMISSIONS—APPLICATION OF UTILITY RATES.

   The Public Service Commission is best suited to hear questions concerning the application of rates approved by the commission, since such a determination is particularly within the province of the commission's specialized knowledge and expertise and if the approved rates are found not to apply then the commission can find or approve a rate which would apply.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5–7] 64 Am Jur 2d, Public Utilities § 230 *et seq.*
[3, 4, 8, 9] 64 Am Jur 2d, Public Utilities §§ 9, 79–132.
[10] 1 Am Jur 2d, Administrative Law § 95.

CONCURRENCE BY BRONSON, P. J.

5. COURTS—JURISDICTION—PRIMARY JURISDICTION—ADMINISTRATIVE
LAW.

*The doctrine of primary jurisdiction is used to guide a court in determining whether it should refrain from exercising its jurisdiction until after an administrative agency has determined some question arising in the proceeding before the court.*

6. COURTS—PRIMARY JURISDICTION—FACTORS—ADMINISTRATIVE LAW.

*Application of the doctrine of primary jurisdiction requires the trial judge to consider as factors (1) the degree of uniformity which will be achieved by requiring a litigant to pursue administrative remedies, (2) the need for the administrative expertise of an agency in a particular area, and (3) if issues of law are paramount the trial court's decision to entertain the proceedings is usually upheld, however, if factual issues are involved the administrative agency should be allowed to resolve those issues first.*

7. COURTS—PRIMARY JURISDICTION—COURT'S DISCRETION—ADMINISTRATIVE LAW.

*Under the doctrine of primary jurisdiction the ultimate decision whether an administrative agency should first consider a case is within the discretion of the trial court, and because the doctrine rests upon a sound policy of judicial restraint, only firmly established expediences should be considered in the exercise of that discretion.*

8. COURTS—PUBLIC SERVICE COMMISSIONS—JURISDICTION—RATE ISSUES.

*The Public Service Commission and the courts have concurrent jurisdiction over utility rate issues.*

9. COURTS—RATE ISSUES—RULES—PUBLIC SERVICE COMMISSIONS.

*The creation of a hard-and-fast rule that all direct challenges to utility rates must first be brought before the Public Service Commission cannot be accepted where the case precedent for it is only dictum.*

10. ADMINISTRATIVE LAW—STATUTORY INTERPRETATION—ISSUE OF FACT—ISSUE OF LAW—ADMINISTRATIVE BODY.

*While statutory interpretation is usually classified as a legal issue, the same cannot be said of an administrative body interpreting its own regulations.*

Appeal from Wayne, Harry J. Dingeman, Jr., J. Submitted October 11, 1975, at Detroit. (Docket No. 23738.) Decided May 18, 1976.

La Salle Townhouses Cooperative Association and others brought suit challenging the rate for steam heat applied to the association by The Detroit Edison Company. Accelerated judgment for defendant. Plaintiffs appeal. Affirmed.

*Byron H. Higgins* and *Samuel I. Shuman,* for plaintiffs.

*Fischer, Franklin & Ford* (by *George Hogg, Jr.,* and *Francis E. Bentley),* for defendant.

Before: BRONSON, P. J., and BASHARA and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. Plaintiffs are four cooperative associations, and various individual members of those associations, who use steam heat provided by defendant, The Detroit Edison Company. For a number of years, Edison has included in its steam rate computations an automatic fuel adjustment clause by which it passes on to all steam heat users any increases in the cost of fuel utilized to produce the steam. Plaintiffs brought suit in Wayne County Circuit Court challenging the fuel adjustment clause and seeking to recover the money paid pursuant to it.

Detroit Edison moved for accelerated judgment on the ground that the circuit court lacked subject matter jurisdiction. The trial judge granted the motion ruling that exclusive jurisdiction of the subject matter was in the Public Service Commission pursuant to MCLA 460.6; MSA 22.13(6). Alternatively, the trial judge ruled that even if the

circuit courts have concurrent jurisdiction in such matters, under *Valentine v Michigan Bell Telephone Co,* 388 Mich 19; 199 NW2d 182 (1972), challenges to the validity of the MPSC rates themselves must first go to that commission. Plaintiffs now appeal that ruling.

Plaintiffs base their action on MCLA 460.6a; MSA 22.13(6a) which, prior to the 1972 amendment, prohibited the Public Service Commission from permitting the incorporation of fuel adjustment clauses in rate schedules for domestic service. Plaintiffs contend that they are domestic users. However, Detroit Edison has only two rates for steam heat; both are approved by the PSC; both contain fuel adjustment clauses.

As the trial judge noted, the basic issue is whether plaintiffs are "domestic" service within the meaning of MCLA 460.6a; MSA 22.13(6a). Plaintiffs do not challenge directly the validity of the PSC rates, but plaintiffs do argue that the rates do not apply to them. Plaintiffs challenge Detroit Edison's application of the fuel adjustment clause to them. But the clause is part of the rate. Detroit Edison has no rate schedule for steam heat which does not include a fuel adjustment clause. The PSC has only authorized Detroit Edison to sell steam heat at rates which include a fuel adjustment. Thus, the question is whether the rates approved by the PSC apply to plaintiffs.

Since the approved rates include fuel adjustment clauses, we presume the rates are "commercial". If plaintiffs are domestic service, not commercial, then they are entitled to a third "domestic" rate. Whether plaintiffs are entitled to a classification of "domestic service" and a third rate schedule without a fuel adjustment clause is—as the trial court noted—"particularly within the province of the commission's specialized knowledge and exper-

tise". If the approved rates do not apply, then the PSC can find or require and approve a rate which would apply.

"There are some situations involving rates in which a customer may sue a utility in a court of general jurisdiction." *Valentine, supra,* 388 Mich at 25.

But this is not one of those situations. Plaintiffs do not contend that they have suffered damage as a result of violations of tariffs and regulations. See *Valentine v Michigan Bell Telephone Co, supra,* at 30. Nor do plaintiffs contend that the two PSC rates are invalid. Basically, plaintiffs' position is that the approved rates do not apply to them and that another rate, without a fuel adjustment clause, should apply.

"Ordinarily, a party aggrieved by the provisions of a tariff or code should seek relief by an attack upon those provisions before the Public Service Commission and from it to the Ingham County Circuit Court." 388 Mich at 26.

The PSC should determine whether the approved rates apply to plaintiffs.

Affirmed.

BASHARA, J., concurred.

BRONSON, P. J. *(concurring).* I reach the same result as the majority because I cannot say that the trial judge abused his discretion in requiring plaintiffs to initially pursue their claims before the Public Service Commission. However, I write separately because I do not agree that *Valentine v Michigan Bell Telephone Co,* 388 Mich 19; 199 NW2d 182 (1972), has any application here.

Although the majority does not specifically mention it, we are proceeding under the doctrine of "primary jurisdiction", inasmuch as the courts and the Public Service Commission have concurrent jurisdiction over utility rate issues. We do not accept the trial court's alternative ruling that the Public Service Commission has exclusive jurisdiction over that subject matter.

The doctrine of "primary jurisdiction" is used to guide a court in determining whether it should refrain from exercising its jurisdiction until after an administrative agency has determined some question arising in the proceeding before the court.[1] The ultimate decision whether the administrative agency should first consider the case is within the discretion of the trial court.[2] Yet because the doctrine rests upon a "sound policy of judicial restraint", only "firmly established expediences" should be considered in the exercise of that discretion.[3]

The appellate decisions developing the doctrine have recognized that certain factors are important, and should be considered by the trial judge. One which is frequently mentioned is whether issues of law, rather than issues of fact, are paramount. If issues of law are significant, the trial court's decision to entertain the proceedings is usually upheld.[4] However, if the case primarily involves factual issues, the administrative agency should be

---

[1] Davis, Administrative Law Treatise (1st ed, 1958), § 19.01, p 3.

[2] *Wisconsin Collectors Association, Inc v Thorp Finance Corp,* 32 Wis 2d 36, 45; 145 NW2d 33, 37 (1966), *White Lake Improvement Association v City of Whitehall,* 22 Mich App 262, 284, fn 35; 177 NW2d 473 (1970).

[3] *State ex rel Shevin v Tampa Electric Co,* 291 So 2d 45 (Fla App, 1974), *cert den,* 297 So 2d 571 (Fla, 1974).

[4] *See, State v Dairyland Power Co-op,* 52 Wis 2d 45, 56; 187 NW2d 878, 883 (1971), *Kovarsky v Brooklyn Union Gas Co,* 279 NY 304; 18 NE2d 287 (1938), *Davis, supra,* p 8.

allowed to resolve those first.[5] Another important factor is the degree of uniformity which will be achieved by requiring a litigant to pursue his administrative remedies.[6] Finally, a need for the "administrative expertise" of the agency in a particular area is a reason for the court to decline jurisdiction.[7]

Certain language in *Valentine* seems to depart from this traditional analysis and to create a hard-and-fast rule with respect to utility rates—that all direct challenges to such rates must be first brought before the Public Service Commission. However, the actual holding in *Valentine* was that tort actions against public utilities can be decided initially by the courts even if a tariff is applicable. Because the *Valentine* "rule" is dictum, I would decline to follow it. It is simply too inflexible, and contrary to the ordinary rules of "primary jurisdiction" in some of its applications.[8]

---

[5] *See, Fletcher Paper Co v Detroit & Mackinac R Co,* 198 Mich 469; 164 NW 528 (1917), *Anderson v Chicago, Milwaukee & St Paul R Co,* 208 Mich 424; 175 NW 246 (1919), *Detroit United Railway v Oakland Circuit Judge,* 215 Mich 275; 183 NW 938 (1921), *Federal Gravel Co v Detroit & Mackinac R Co,* 248 Mich 49; 226 NW 677 (1929), *Texas & Pacific R Co v Abilene Cotton Oil Co,* 204 US 426; 27 S Ct 350; 51 L Ed 553 (1907), *Croydon Syndicate v Consolidated Edison Co,* 72 NYS2d 846, 849 (1947), *Robinson v Baltimore & Ohio R Co,* 222 US 506; 32 S Ct 114; 56 L Ed 288 (1912).

[6] Justice LEVIN, while sitting on our Court, stated that concept in *White Lake Improvement Association, supra,* fn 2, pp 281, 282, as follows:

"To rule on the plaintiff's cause of action would require a court to duplicate the efforts of the water resources commission and perhaps to contradict the agreements which, we have observed, function as orders. In order to achieve uniformity and consistency in this vital area, we think it would be wise for the courts to refrain from ruling on the merits of the association's claims at this time.

" ' * * * *The principal reason behind the doctrine is recognition of the need for orderly and sensible coordination of the work of agencies and of courts.' "* (Emphasis by the Court.)

[7] *Great Northern Railway v Merchants Elevator Co,* 259 US 285; 42 S Ct 477; 66 L Ed 943 (1922), *United States v Western Pacific R Co,* 352 US 59; 77 S Ct 161; 1 L Ed 2d 126 (1956).

[8] For example, in *Kovarsky v Brooklyn Union Gas Co, supra,* fn 4, a

Important to a resolution of this case is plaintiffs' own characterization of their claim. Plaintiffs repeatedly state in their brief that the trial judge erroneously viewed their cause of action as a direct attack on the validity of the rates. Instead, they argue that the regulations are ambiguous as to which steam heat users should be assessed a fuel adjustment charge:

" * * * The promulgated rates established by the Commission and attached to this brief as Exhibits A and B clearly contain a basic rate for the delivering of steam and a formula for applying an automatic fuel adjustment to commercial users. The Commission's order does not direct or comment upon whether or not the utility company was required to apply the automatic fuel adjustment clause to every customer served by its central steam system, indeed it must be assumed that the Commission intended it to apply only to commercial customers. It must be concluded that the Commission did not establish a rate schedule which called upon the utility company to contravene the clear prohibition as set forth in MCLA 460.6(a).* * * "

Accepting that characterization, I agree with my brothers that the commission should first hear this case.

The decisive factor in this case is the need for uniformity. If the circuit courts across the state decide this type of claim, the likely result will be a

_____

group of consumers of gas sought to have a $1 gas connection charge declared contrary to a certain statute. The Court concluded that the lower court could consider that issue first:

"Although it may not be clear whether the term 'service charge' as used in the statute covers a charge for turning on gas after it has been turned off for the summer, that being a question of law there is no necessity of sending the plaintiff back to the Commission to get its interpretation of the term as used in the statute, as the Commission has only such judicial power as is incidental to the exercise of its other powers." 279 NY at 313.

Under the strict *Valentine* "rule", this challenge to the rates would be first heard by the commission.

number of inconsistent decisions as to the meaning of the regulations. However, with the commission first hearing the case, the administrative intent behind the regulations can be definitively settled. In addition, while statutory interpretation is usually classified as a legal issue,[9] the same cannot be said of an administrative body interpreting its own regulations. Consequently, applying ordinary principles of "primary jurisdiction", I concur in the affirmance of the trial court's decision to initially defer to the Public Service Commission on this matter.

---

[9] See footnote 8.